JUSTICE RICE,
dissenting.
¶52 I agree with the Court that this case is extraordinarily complicated and that the District Court searched diligently for an equitable and right solution, as we all would hope for. See Opinion, ¶ *502 30. However, I believe the record clearly demonstrates that Otto is being made to re-pay his withdrawals twice. While an underlying theme of the District Court’s decision, and of our decision, is Otto’s apparent profligacy, the law protects him from having to pay twice for his excessive draws, even for purposes of an equitable result. Accordingly, I dissent from the resolution of Issues I and II.
¶53 The District Court’s error in calculating the equalization of the capital accounts following the 2003 trial is first revealed by the Court’s recitation of the facts. As the Court points out, the “December 1999 [trial] determined ... the compensation for each of the brothers which included salary, benefits, and draws asainst capital accounts from the inception of their businesses through March 31, 1999.” Opinion, ¶ 15 (emphasis added). After this trial, the District Court concluded, in its August 2000 order as later amended in March 2001, that this “differential between the parties is $456,423.” Thus, this was the amount Otto owed William for the difference in compensation which led to the deficit in Ottos’s capital account, and Otto subsequently paid this amount to William, as documented in the Partial Satisfaction of Judgment filed in June of 2004. The calculation of the repayment amount included the $1,286,344 in draws taken by Otto from the farm/ranch operation’s capital account which had led to the imbalance in the capital accounts, and the order for Otto to pay $456,423 represented the equalization remedy for the period prior to and leading up to March 31, 1999.
¶54 The second trial, held in 2003, was to divide earnings and expenses for the twenty months between April 1,1999, and December 31, 2002. Opinion, ¶ 16. The District Court’s order stemming from the 2003 trial ordered the partnership capital accounts equalized, without specifically recognizing that the first trial’s calculation of compensation had included imbalances in the capital accounts. During the 2003 trial, CPA Bruce Gaare testified that his calculation of the balances of the capital accounts included the history of the draws prior to March 31, 1999. As he explained, the calculations included “transactions or draws on charges against the capital account that were for time periods prior to March 31st, 1999” and the “capital accounts are an accumulation since the partnership began.” Yet, despite this explanation, the District Court used the exact calculations of the capital account balances offered by Gaare to determine that “William’s capital account at the end of 2002 was at $821,008 and Otto’s was a negative $848,960.” It was impossible to arrive at these figures without including the financial history of the partnership prior to March 31,1999-the time *503 period already considered in the 1999 trial, in which compensation (including capital accounts) had already been calculated. It is this overlap which effectively requires Otto to equalize his capital account twice for the period prior to March 31, 1999.
¶55 However, the Court concludes that the 1999 trial “did not reference William’s capital account at all” and therefore “did not address equalization of capital accounts” and that the “1999 trial orders were not intended to address nor constrain any subsequent equalization of the Baltrusches’ capital accounts.” Opinion, ¶ 28. This conclusion is erroneous, or, at most, is true only in the sense that different labels-“compensation” verses “capital accounts”-were used during the litigation. However, use of these labels without further determination of the financial issues behind them leads to an erroneous conclusion. While the District Court, after the 1999 trial, did not specifically provide the amount of the capital draws, the court nonetheless clearly held that the $1,286,344 was the amount in draws that Otto took “more than William.” Accordingly, the $1,286,344 calculated by the District Court was the amount of Otto’s draws in excess of William’s draws. Therefore, the 1999 trial, leading to the order for Otto to pay $456,423, effectively equalized the capital accounts for the period prior to March 31,1999. The fact that the court labeled this payment as “equalization of compensation” rather than “equalization of capital accounts” is without financial significance for purposes of this appeal. The bottom line is that the court considered the draws on the capital accounts in calculating the compensation and therefore also equalized the capital accounts.
¶56 This case is complex, but this particular issue boils down to basic math. Otto has already paid for the imbalance in the accounts. Consequently, it was error for the District Court, during the 2003 trial, to consider evidence that included transactions from before the appropriate time period of April 1,1999, to December 31, 2002. Those had been settled and paid by Otto.
¶57 Because I conclude that the District Court’s calculation of the capital accounts was in error, I believe the District Court’s subsequent calculation of interest is also in error because it was likewise based on the flawed calculation of Otto’s imbalance. See Opinion, ¶ 37. Accordingly, I would conclude this issue was decided in error.
¶58 I would reverse.